STEPHEN PRESCOTT ET AL. *v.* CITY
OF MERIDEN ET AL.
(SC 17134)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued February 15—officially released May 31, 2005

*Lori Welch-Rubin*, with whom, on the brief, was *David Johnson*, for the appellants (plaintiffs).

*Thomas R. Gerarde*, with whom, on the brief, was *Jay T. DonFrancisco*, for the appellees (defendants).

*Opinion*

BORDEN, J. One of the three exceptions to a municipal employee's qualified immunity for discretionary acts is "where the circumstances make it apparent to the public officer that his or her failure to act would likely subject an identifiable person to imminent harm . . . ." (Internal quotation marks omitted.) *Purzycki* v. *Fairfield*, 244 Conn. 101, 108, 708 A.2d 937 (1998). We have extended that exception beyond identifiable individuals "to narrowly defined identified classes of foreseeable victims." (Internal quotation marks omitted.) Id. The sole issue in this certified appeal is whether a parent attending his child's public school athletic event comes

within that class of foreseeable victims.[1] We conclude that such a parent does not. Accordingly, we affirm the judgment of the Appellate Court.

The named plaintiff, Stephen Prescott,[2] brought this negligence action against the defendants.[3] The trial court granted the defendants' motion for summary judgment and, accordingly, rendered judgment for the defendants. The plaintiff appealed to the Appellate Court, which affirmed the judgment. *Prescott* v. *Meriden*, 80 Conn. App. 697, 703, 836 A.2d 1248 (2003).

For purposes of this appeal, the following facts, as taken from the plaintiff's affidavit in response to the defendants' motion for summary judgment, and the following procedural history, are undisputed. The plaintiff is the father of Justin Prescott, who in the fall of 1998, was a player on the varsity football team of Orville H. Platt High School (Platt) in Meriden. On Thanksgiving morning, November 26, 1998, Justin was to play in his last high school football game against the other public high school in Meriden, Francis P. Maloney High School. The game was the biggest contest of the year. On that morning, it was pouring rain, and the forecast for game time predicted continued rain. In fact, the plaintiff heard

[1] We granted the plaintiffs' petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the named plaintiff [Stephen Prescott] did not fall within the 'imminent harm to an identifiable person' exception to qualified immunity of a municipal employee?" *Prescott* v. *Meriden*, 268 Conn. 901, 845 A.2d 405 (2004).

[2] Stephen Prescott's wife, Anne Prescott, also sought damages for loss of consortium. Although she is also a plaintiff in this appeal, because her claim is purely derivative of her husband's, we refer herein to Stephen Prescott as the plaintiff.

[3] The defendants are: (1) Richard Katz, the director of athletics for Orville H. Platt High School in Meriden; (2) Mark Zebora, the director of the department of parks and recreation for the city of Meriden; (3) Elizabeth Ruocco, the director of the department of education for the city of Meriden; (4) the department of education for the city of Meriden; and (5) the city of Meriden. The alleged liability of the city of Meriden was based on its obligation of indemnity under General Statutes § 7-465.

on the radio that many other football games scheduled for that day had been canceled.

Platt was the visiting team, and the bleachers for its supporters were moveable. When the plaintiff arrived at the field, the seats for the Platt supporters were wet from the rain and muddy from dirt tracked by people who had climbed up them after crossing the wet field area. The only way up and down the bleachers was to step on the seats, because there was no stairway. Further, there was no nonskid material on any part of the bleacher seats, and there were no handrails.

The plaintiff watched the game from the top step of the bleachers. Just before the end of the game, he began to descend. After one or two steps, he slipped on the wet, muddy surface of the fiberglass-covered plank seats and fell on his back, suffering severe and permanent injuries, leaving him totally disabled.

In his complaint, the plaintiff claimed that the defendants had been negligent in the following respects: (1) allowing the bleachers to be used during heavy rain; (2) failing to postpone the game due to the heavy rain that caused the bleachers to become muddy, wet and slippery; (3) failing to provide a nonskid surface or stairs to protect against slipping; (4) failing to provide handrails; and (5) failing to inspect the bleachers to remedy the dangerous surface. The defendants raised governmental immunity as a special defense, and moved for summary judgment on the basis of that defense. The trial court concluded that, for purposes of the defense, the plaintiff was not an identifiable individual or member of an identifiable class, but was, instead, a member of the general public attending the game. Accordingly, the court granted the motion for summary judgment and rendered judgment for the defendants. The Appellate Court agreed with the trial

court and affirmed the judgment. Id. This certified appeal followed.

"[A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. . . . The word ministerial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Burns* v. *Board of Education*, 228 Conn. 640, 645, 638 A.2d 1 (1994). The only exception to a municipal employee's qualified immunity for discretionary acts that is relevant to the present case is "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person [or member of an identifiable class of foreseeable persons] to imminent harm . . . ." (Internal quotation marks omitted.) Id.

The plaintiff concedes that the defendants' conduct was discretionary, and the plaintiff does not claim that he was an identifiable individual for purposes of the exception to the governmental immunity doctrine. Thus, the plaintiff may prevail only if he comes within an identifiable *class* of foreseeable victims. He claims, therefore, that, as a parent of a high school athlete attending his son's high school athletic event, he was a member of an identifiable class of foreseeable victims subject to imminent harm for purposes of satisfying that exception to qualified immunity of a municipal employee for discretionary acts. We disagree.

We begin with the understanding that the question of whether a particular plaintiff comes within a cognizable class of foreseeable victims for purposes of this exception to qualified immunity is ultimately a question of policy for the courts, in that it is in effect a question of duty. *Purzycki* v. *Fairfield*, supra, 244 Conn. 108 n.5.

This involves a mixture of policy considerations and "evolving expectations of a maturing society . . . ." *Burns* v. *Board of Education,* supra, 228 Conn. 647. Thus, it involves a question of law, over which our scope of review is plenary. Id., 646.

Thus far, the only identifiable class of foreseeable victims that we have recognized for these purposes is that of schoolchildren attending public schools during school hours. See id., 640; see also *Purzycki* v. *Fairfield,* supra, 244 Conn. 101 (determining whether there was sufficient evidence of imminent harm to schoolchild). In determining that such schoolchildren were within such a class, we focused on the following facts: they were intended to be the beneficiaries of particular duties of care imposed by law on school officials; they were legally required to attend school rather than being there voluntarily; their parents were thus statutorily required to relinquish their custody to those officials during those hours; and, as a matter of policy, they traditionally require special consideration in the face of dangerous conditions. *Burns* v. *Board of Education,* supra, 228 Conn. 648–50. None of these kinds of considerations applies to the plaintiff in the present case, and the applicable considerations point in the opposite direction.

First, the plaintiff's presence at the game was purely voluntary. He was not compelled to attend by any statute, regulation or other legal command. In this respect, he was no different from any of the other spectators—whether relatives or friends of the team members, other students at the respective schools, teachers and other school staff members, or simply fans of high school football interested enough to brave any weather to watch a traditional Thanksgiving Day game. Thus, the plaintiff was simply like any other member of the public attending the game. Second, the plaintiff was entitled to no special consideration of care from the school

officials because of his status as a parent. Thus, he was unlike the schoolchildren in both *Burns* and *Purzycki*. Third, we have characterized the classes of foreseeable victims as "narrowly defined . . . ." Id., 646. Recognizing the plaintiff as establishing a cognizable class of foreseeable victims, namely, parents of students on the team, would be contrary to this characterization, especially given the close resemblance of the plaintiff as spectator to all of the other members of the public similarly situated. Moreover, to do so would mean that all spectators at a public municipal event would constitute a class of foreseeable victims for these purposes, thus making the exception so broad that it would threaten to swallow the rule.

The plaintiff contends, however, that "[b]ecause public policy fostering advances in education now includes a specific focus on parental involvement as a necessary component to a child's academic success, it is reasonable to extend that duty of care abrogating qualified governmental immunity to parents attending school sponsored activities." In support of this contention, the plaintiff points us to a body of educational research indicating that parental involvement in their children's education is closely linked to the children's success in school. Thus, the plaintiff argues, "[i]f this seriously injured parent cannot pursue a cause of action against the municipal employees whose negligence created a readily ascertainable risk of imminent harm, then parents may think twice in the future about attending their children's school events," thus chilling the educational policy in favor of parental involvement. We are not persuaded.

We do not dispute the validity of the educational research presented by the plaintiff. Indeed, common experience and common sense teach the same lesson. Nor do we dispute the general proposition, implicit in the plaintiff's argument, that the law's policy choices

should be informed by the incentives and disincentives created by any particular rule of law. See *DiLullo* v. *Joseph*, 259 Conn. 847, 854, 792 A.2d 819 (2002). We disagree, however, that it is at all necessary to extend the narrow exception involved in the present case in order to further that educational policy. Put another way, we do not think that any parent will choose to attend his or her child's school event—athletic or otherwise—because he or she may be able to recover in negligence against school officials if he or she is injured during that attendance, and we do not think that any parent so inclined to attend such an event will decline to do so because he or she may not be able to secure such a recovery. Although there are theoretical incentives and disincentives involved in the plaintiff's positions, we do not think that they will, in fact, govern parents' conduct in the real world. The connection between parental involvement in a child's education and the likelihood of recovery in the event of negligence is simply too remote rationally to form the basis of the policy choice urged on us by the plaintiff.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.