******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SPENCER JAHN *v.* BOARD OF EDUCATION OF THE
TOWN OF MONROE ET AL.
(AC 35997)

Lavine, Keller and Schaller, Js.

*Argued May 14—officially released September 9, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Sommer, J.)

*Marc J. Ubaldi*, for the appellant (plaintiff).

*Mark A. Perkins*, for the appellees (defendants).

*Opinion*

KELLER, J. In this negligence action, the plaintiff, Spencer Jahn, appeals from the decision of the trial court granting summary judgment in favor of the defendants, Board of Education of the Town of Monroe (board) and Thomas Harkins, the head coach of the swim team at Masuk High School in Monroe. The plaintiff claims that the court erred in granting the defendants' motion for summary judgment on the basis of governmental immunity. The plaintiff argues that summary judgment was improperly granted as there was a genuine issue of material fact as to whether, at the time of his injury, he was an identifiable person subject to imminent harm, a recognized exception to governmental immunity.[1] We disagree and affirm the judgment of the trial court.

The court's memorandum of decision describes the undisputed factual background relevant to the plaintiff's appeal. "On December 19, 2012, the plaintiff . . . a member of the boys' swimming team at Masuk High School in Monroe . . . filed a one count complaint sounding in negligence against the defendants . . . . The plaintiff's central claim [was] that Harkins, by failing to properly supervise warm-up drills conducted by the swimming team prior to a swim meet, subjected the plaintiff to imminent harm.

"In his complaint, the plaintiff allege[d] the following facts. On December 17, 2010, at approximately 3:30 p.m., the plaintiff was participating in warm-up drills at the direction of Harkins prior to a swimming competition at Masuk High School. Specifically, the defendant had directed the members of the swimming team to practice their racing starts by diving into the pool and swimming several lengths. Harkins did not, however, personally supervise the drills nor did he appoint another individual to do so. Pursuant to Harkins' previous instruction, the plaintiff dove into the pool and swam several lengths before turning around and heading back to the pool wall. At the same time, another member of the swimming team[2] dove into the pool, striking the plaintiff and causing him several severe injuries, including injuries to the plaintiff's head and neck.

"The plaintiff allege[d] that at all relevant times Harkins was acting as the agent or employee of the [board] and was responsible for supervising the activities of the swimming team. The plaintiff allege[d] further that his injuries were caused by the negligence of Harkins in that he (1) left the swimming team unsupervised during the warm-up drill, (2) directed the team to perform a drill that was not safe because multiple swimmers were permitted to dive into the same lane, and (3) failed to ensure that a coach was present during the drill to indicate when it was safe for swimmers to

dive into the pool. The plaintiff also allege[d] that, by virtue of being a student at Masuk High School, he was an identifiable person subject to imminent harm." (Footnotes altered.)

On March 27, 2013, the defendants filed an answer and three special defenses, including the contributory negligence of the plaintiff; common-law governmental immunity as to Harkins, a municipal employee; and governmental immunity as to the board, as provided by General Statutes § 52-557n.[3] The plaintiff did not file a reply to the defendants' special defenses.

The defendants filed a motion for summary judgment on May 1, 2013. Therein, the defendants argued (1) "there are no genuine issues of material fact . . . as to the fact that the defendants are immune from liability under the [doctrine] of governmental immunity," and, in the alternative, (2) Harkins "is not a real party at interest in this lawsuit."[4] The defendants' motion was accompanied by a memorandum of law and three affidavits: that of Harkins; that of John DeGennaro, the director of athletics at Masuk High School; and that of Thomas Jurzynski, the assistant coach of the boys' swim team.[5] On June 17, 2013, the plaintiff filed an objection to the motion for summary judgment, accompanied by a memorandum of law and an affidavit by the plaintiff.

The court heard oral argument on June 18, 2013, and filed a written memorandum of decision granting the motion for summary judgment on August 2, 2013. The court concluded that there was no genuine issue of material fact that the doctrine of governmental immunity was applicable because (1) Harkins' conduct as a swim coach and the board's conduct in supervising him were public and discretionary, rather than ministerial acts, and (2) the identifiable person-imminent harm exception to the doctrine of governmental immunity did not apply to the plaintiff. On appeal, the plaintiff challenges only the court's conclusion that the identifiable person-imminent harm exception does not apply to him.

We begin with the relevant standard of review concerning motions for summary judgment. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Internal quotation marks omitted.) *Thivierge* v. *Witham*, 150 Conn. App. 769, 773, 93 A.3d 608 (2014).

"[Practice Book § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affida-

vits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book [§ 17-45]." (Internal quotation marks omitted.) *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 704–705, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002).

We briefly review the doctrine of municipal governmental immunity in Connecticut to understand the context of the plaintiff's claim. "At common law, a municipality generally was immune from liability for its tortious acts, but its agents and employees faced the same personal tort liability as private individuals. . . . In the early twentieth century, our courts extended qualified immunity to municipal employees as well. . . . Eventually, the personal liability of public officers acting in the scope of their office came to depend on whether the acts or omissions in question were discretionary or ministerial in nature. . . . In 1986, our legislature enacted § 52-557n, which allows a municipality to be held liable for the negligent acts of its employees under certain circumstances. . . . Under the relevant statutory provisions, a municipality's liability in negligence for its employees' acts hinges on the same ministerial-discretionary dichotomy." (Citations omitted.) *Thivierge* v. *Witham*, supra, 150 Conn. App. 774.

"The issue of governmental immunity is simply a question of the existence of a duty of care, and this court has approved the practice of deciding the issue of governmental immunity as a matter of law." (Internal quotation marks omitted.) *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 268, 41 A.3d 1147 (2012).

The availability of governmental immunity as a defense depends on two factors: (1) whether the employee's action was public or private in nature, and (2) whether the employee was engaged in a discretionary or governmental act, versus a ministerial act. See *Violano* v. *Fernandez*, 280 Conn. 310, 334–35, 907 A.2d 1188 (2006). "[T]he test to discern between a public and private duty is as follows: [i]f the duty imposed upon the public official by the statute is of such a nature that the performance of it will affect an individual in a manner different in kind from the way it affects the public at large, the statute is one which imposes upon the official a duty to the individual, and if the official

is negligent in the performance of that duty he is liable to the individual." (Emphasis added; internal quotation marks omitted.) Id., 333. In *Couture* v. *Board of Education*, 6 Conn. App. 309, 313, 505 A.2d 432 (1986), this court held that the board of education's sponsoring of a football game was a public duty. In reaching this conclusion, this court opined: "Pursuant to their duty to provide public education, the town boards are given substantial discretion to determine educational policy. . . . Included in this authority is the power to decide that sporting events are a necessary or desirable part of the town's educational program." (Citation omitted.) Id., 313.

The second factor to be determined is whether the official acts or omissions are ministerial or discretionary. This is normally a question of fact, "although there are cases in which it is apparent from the complaint that the alleged negligent actions or omissions necessarily involved the exercise of judgment and were discretionary as a matter of law." *Haynes* v. *Middletown*, 122 Conn. App. 72, 79, 997 A.2d 636 (2010), rev'd on other grounds, 306 Conn. 471, 50 A.3d 880 (2012). In this case, the plaintiff concedes that the defendants' actions were discretionary in nature. Specifically, the plaintiff's objection to the defendants' motion for summary judgment stated: "The plaintiff acknowledges . . . that the conduct he alleges would likely be considered discretionary acts." In the plaintiff's appellate brief, he reaffirmed this position, conceding: "The statements [made in the affidavits proffered by the defendants] are also sufficient, at this stage, to establish that the acts or omissions complained of were discretionary in nature."

In *Edgerton* v. *Clinton*, 311 Conn. 217, 86 A.3d 437 (2014), our Supreme Court explained the public policy rationale for the doctrine of governmental immunity as it applies today. "Affording immunity to municipal officers performing discretionary acts serves the policy goal of avoiding expansive exposure to liability, which would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." (Citation omitted; internal quotation marks omitted.) Id., 229–30.

In conducting its thorough and well reasoned analysis of governmental immunity, the trial court first concluded that the negligence alleged by the plaintiff in his complaint involved discretionary and public acts on the part of the board and its employees. The court appropriately relied on the uncontroverted evidence submitted by the defendants that established that their actions in running the after school swim program were not prescribed by any state or school policy and were designed for the benefit of students in general, and not the individual plaintiff. The evidence established that the defendants' provision for the swim team was public in nature and that their acts or omissions required the exercise of personal judgment, rendering them discretionary in nature. See *Violano* v. *Fernandez*, supra, 280 Conn. 318. Therefore, absent the applicability of any exception, the defendants were entitled to governmental immunity. See id., 335. On appeal, the plaintiff does not dispute the court's findings that the acts alleged to be negligent on the part of the defendants are public and discretionary. Instead, the focus of the plaintiff's argument is that the court erred in finding that there was no genuine issue of material fact in dispute that he was not an identifiable person subject to imminent harm because the defendants failed to meet their burden of showing the nonexistence of any issue of fact as to this exception. We disagree.

Our Supreme Court has recognized three exceptions to discretionary act immunity: "[F]irst, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Internal quotation marks omitted.) *Durrant* v. *Board of Education*, 284 Conn. 91, 95 n.4, 931 A.2d 859 (2007). "Each of these exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force." (Internal quotation marks omitted.) *Doe* v. *Petersen*, 279 Conn. 607, 615, 903 A.2d 191 (2006).

The present case concerns only the first exception, where an act or omission would be likely to subject an identifiable person to imminent harm. This exception applies when "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Internal quotation marks omitted.) Id., 616. This exception has three elements: "(1) an imminent harm; (2) an identifiable victim; and (3) a public

official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." Id. "[T]he criteria of identifiable person and imminent harm must be evaluated with reference to each other. An allegedly identifiable person must be identifiable as a potential victim of a specific imminent harm. Likewise, the alleged imminent harm must be imminent in terms of its impact on a specific identifiable person." (Internal quotation marks omitted.) *Cotto* v. *Board of Education*, 294 Conn. 265, 276, 984 A.2d 58 (2009). This exception is applicable "only in the clearest cases." Id.[6]

The identifiable person contemplated by the exception, however, need not be a specifically identified individual subject to imminent harm if the plaintiff is a member of a "narrowly defined identified [class] of foreseeable victims." *Burns* v. *Board of Education*, 228 Conn. 640, 646, 638 A.2d 1 (1994). In *Burns*, the court recognized schoolchildren who are on school property during school hours as one identifiable class of foreseeable victims. Id., 649–50. This class has been consistently recognized by the courts of our state as narrowly drawn.[7]

Our Supreme Court, in determining that schoolchildren are within an identifiable class of foreseeable victims, focused on the following facts: "[schoolchildren] were intended to be the beneficiaries of particular duties of care imposed by law on school officials; they were legally required to attend school rather than being there voluntarily; their parents were thus statutorily required to relinquish their custody to those officials during those hours; and, as a matter of policy, they traditionally require special consideration in the face of dangerous conditions." *Prescott* v. *Meriden*, 273 Conn. 759, 764, 873 A.2d 175 (2005).

In his complaint, the plaintiff alleges that he, "*as a student at school*, was an identifiable person subject to imminent harm." (Emphasis added.) In its memorandum of decision, the trial court stated: "The plaintiff does not explicitly state whether his position is that he was an identifiable *individual* or a member of an identifiable *class*, but, rather, refers to himself only as an identifiable 'victim.' The plaintiff's status as either an individual or a member of a class is an important distinction because the analysis attendant [in] these two cases is different. See, e.g., *Cotto* v. *Board of Education*, [supra, 294 Conn. 274–75] (noting distinction in analysis between whether plaintiff was member of identifiable *class* or was identifiable *individual*; finding error where trial court 'blurred' distinction). Because, here, the plaintiff relies primarily upon *Burns* . . . which recognized for the first time an identifiable class of foreseeable victims, the complaint bases its claim of an exception to governmental immunity upon the plaintiff's status as a student at a public school and at oral argument counsel for the plaintiff only addressed

whether the plaintiff was a member of an identifiable class, the court construes the ground for the plaintiff's objection to be that there is a genuine dispute of material fact regarding whether the plaintiff fell within an identifiable *class* at the time of the injury." (Emphasis in original.)

As previously noted, the plaintiff never filed a reply to the defendants' special defense of governmental immunity delineating the nature of the exception to immunity on which he relies. His complaint bases its claim of an exception to governmental immunity upon the plaintiff's status as a student at a public school. In his brief to the trial court, to counter the defendants' argument that he failed to plead that he fell within a class of identifiable victims subject to imminent harm, he stated: "This is not accurate. The plaintiff alleged that at the time of the aforementioned incident, the plaintiff, as a student at school, was an identifiable person subject to imminent harm." During oral argument before the court on the motion for summary judgment, counsel for the plaintiff indicated that the viability of the defendants' motion came down to whether he fit the exception as a member of a "foreseeable class of [identifiable] victims," despite the fact that the school activity, an extracurricular team sport, was being conducted after mandatory school hours. In addition, the plaintiff's memorandum in support of his objection to the motion for summary judgment also relied on *Burns* v. *Board of Education*, supra, 228 Conn. 646, which recognized, for the first time, an identifiable class of foreseeable victims.

"[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.) *Nichols* v. *The Milford Pediatric Group, P.C.*, 141 Conn. App. 707, 711, 64 A.3d 770 (2013). On the basis of our plenary review of the pleadings, affidavits and memoranda of law submitted, as well as the arguments at the summary judgment proceeding, we agree with the trial court that the plaintiff has not raised the applicability of the identifiable *individual* victim-imminent harm exception to discretionary act immunity.

The plaintiff failed to provide the court with any factual or legal analysis as to how he was individually and specifically "identifiable as a potential victim of a specific imminent harm," a harm occurring "within [a] framework limited in duration, place and condition" and "imminent in terms of its impact on the plaintiff as a specific identifiable person." (Internal quotation marks omitted.) *Cotto* v. *Board of Education*, supra, 294 Conn. 276, 279–80. Rather, he based his claim on his status as a student at school and argues that the identifiable class of schoolchildren as foreseeable victims should be expanded to include a schoolchild partic-

ipating in an activity that is required as part of his extracurricular after school program. "This court will not review issues of law that are raised for the first time on appeal. . . . To allow the [plaintiff] to argue one theory . . . [before the trial court] and then press a distinctly different theory on appeal would amount to an ambuscade of the trial court." (Citations omitted.) *State* v. *Harvey*, 27 Conn. App. 171, 186, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992); see also *Bragdon* v. *Sweet*, 102 Conn. App. 600, 607, 925 A.2d 1226 (2007) (court declined to review plaintiff's claim against grant of summary judgment raised for first time on appeal).[8]

For the previously stated reasons, therefore, we will address only whether there is a genuine issue of material fact as to whether the plaintiff is entitled to the governmental immunity exception as a member of a foreseeable class of identifiable victims subject to imminent harm.

"In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim. . . . Other courts, in carving out similar exceptions to their respective doctrines of governmental immunity, have also considered whether the legislature specifically designated an identifiable subclass as the intended beneficiaries of certain acts . . . whether the relationship was of a voluntary nature . . . the seriousness of the injury threatened . . . the duration of the threat of injury . . . and whether the persons at risk had the opportunity to protect themselves from harm." *Durrant* v. *Board of Education*, supra, 284 Conn. 101.

Our plenary review of the complaint and the affidavits submitted in support of and in opposition to the motion for summary judgment, viewed in the light most favorable to the plaintiff, the nonmovant, supports the findings and legal analysis of the trial court that there is no genuine issue of material fact that the plaintiff does not qualify as a member of a foreseeable class of schoolchildren who are identifiable victims subject to imminent harm. The three affidavits submitted by the defendants in support of their motion for summary judgment establish that the swim team was an extracurricular, nonmandatory activity, required the payment of a participation fee, and that the plaintiff's injury occurred after normal school hours. We reject the plaintiff's argument that the court improperly decided an issue of fact as to whether his participation in the swim team was voluntary merely because he attests in his affidavit that the warm-up drill was mandatory. If participating in the swim team as a whole was voluntary, a finding which the plaintiff does not contest, then, by extension, so

was his participation in the warm-up drill.

The plaintiff's argument misconstrues the meaning of "not voluntary" within the legal framework set forth in *Burns* v. *Board of Education*, supra, 228 Conn. 649, which emphasized the fact that the class of school-children to which the plaintiff belonged was required by statute to be at school. See also, *Durrant* v. *Board of Education*, supra, 284 Conn. 109 ("there is a significant distinction . . . between a program in which participation is *encouraged* and one in which it is *compelled*"). The plaintiff in *Burns* had no choice but to be at school. Here, in contrast, while it may be true that the plaintiff was "required" to participate in the warm-up drill if he also desired to participate in the swim meet, the fact remains that nothing required the plaintiff to participate in the swim meet or, for that matter, the swim team, in the first place. The plaintiff chose to participate in the swim team when he joined it. He has not argued that any statute or other source of law compelled him to join the team or to participate in the warm-up drill. Thus, under the present facts, the plaintiff does not fall within the class of identifiable schoolchildren recognized by *Burns*.

The focus of the plaintiff's claim is that the court should expand the class of schoolchildren created in *Burns* to include students, such as he, under the present circumstances.[9] He contends that the holding in *Burns* is not explicitly limited to the exception it created for children attending public school during regular school hours because *Burns* did not specifically hold that other groups of identifiable individuals in other contexts could not qualify as a class of identifiable foreseeable victims. We agree that the explicit language of *Burns*, read broadly, does not preclude the possibility of future expansion of the identifiable class of foreseeable victims to include schoolchildren in other contexts. Nevertheless, other cases that have addressed arguments proposing an expansion of this class to parents or children engaged in school-sponsored activities outside of mandatory school hours, including *Durrant* v. *Board of Education*, supra, 284 Conn. 91, have denied such requests. See also *Prescott* v. *Meriden*, supra, 273 Conn. 766; *Lowenadler* v. *Mallard*, Superior Court, judicial district of Danbury, Docket No. CV-08-5004054-S (July 10, 2009) (declining to expand class to students voluntarily participating in nonmandatory, after school faculty-student basketball game). In each of these cases, the proponent of the expansion failed to convince the court that the individuals to be added to the class were similarly situated to those that were already within the class on the basis of factors enunciated in *Burns*.

The plaintiff has failed to provide us with any basis upon which we may conclude that we should depart from prior precedent. There is nothing alleged in the complaint or found in the plaintiff's affidavit which

expressly states, or would lead to an inference if liberally read, that the plaintiff was compelled to be at, or participate in, the warm-up drills before the swim meet. Importantly, in this case, the plaintiff cannot establish that his participation in the warm-up drills was mandatory, a factor that goes directly to his ability to take action to protect himself from harm. Accordingly, we agree with the trial court that there is no genuine issue of material fact that the plaintiff was not within an identifiable class of foreseeable victims at the time of his injury.[10]

We conclude that the plaintiff in this case cannot avail himself of the identifiable person-imminent harm exception to discretionary act immunity afforded to the board and its employee. In light of the facts and arguments presented, summary judgment was properly rendered in favor of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In *Grady* v. *Somers*, 294 Conn. 324, 348, 984 A.2d 684 (2009), our Supreme Court concluded that "the identifiable person, imminent harm common-law exception to municipal employees' qualified immunity also applies in an action brought directly against municipalities pursuant to [General Statutes] § 52-557n (a) (1) (A), regardless of whether an employee or officer of the municipality also is a named defendant." A town board of education, as an agent of the municipality, is potentially immune from "liability for the performance of [discretionary] governmental acts as distinguished from ministerial acts." (Internal quotation marks omitted.) *Heigl* v. *Board of Education*, 218 Conn. 1, 4, 587 A.2d 423 (1991).

[2] The student who allegedly dove into the pool and struck the plaintiff was named in the defendants' apportionment complaint, which was filed on June 3, 2013.

[3] General Statutes § 52-557n (a) provides in relevant part: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance  . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

[4] The defendants claimed that Harkins is being sued in his official capacity only, and, therefore, the real party in interest is the board because "[i]t is well settled law that an action against a government official in his or her official capacity is not an action against the official, but, instead, is one against the official's office and, thus, is treated as an action against the entity itself." *Kelly* v. *New Haven*, 275 Conn. 580, 595, 881 A.2d 978 (2005). Whether the doctrine of qualified immunity in the performance of a discretionary governmental act also applies to Harkins is not an issue in this appeal. It is well established at common law that municipalities *and* their employees are immune from liability for actions taken in discharging their public duties, so long as their actions are discretionary in nature. See *Evon* v. *Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989).

[5] Jurzynski's affidavit contradicts both the plaintiff's allegation in the complaint that Harkins "left the team unsupervised during the warm-up drill," and his attestation in his affidavit that "a senior member of the swim team . . . rather than a coach, was directing team members when to dive into the pool for the drill." Jurzynski attested, "At the time [the plaintiff] claims

he was injured I was present to supervise the swim team drills." The plaintiff does not take issue with this contradiction on appeal.

[6] Outside the public school context, we are aware of only two Connecticut cases wherein a plaintiff has been held potentially to be an individually identifiable person for purposes of the exception. One, decided before the current three-pronged identifiable person-imminent harm exception was adopted, involved a discrete group of intoxicated men, brawling in a bar parking lot while a police officer stood by and failed to intervene until he heard gunshots. See *Sestito* v. *Groton*, 178 Conn. 520, 522–23, 527–28, 423 A.2d 165 (1979). *Sestito* has since been distinctly "limited to its facts." *Thivierge* v. *Witham*, supra, 150 Conn. App. 780 n.8. The other case determined that summary judgment should not have been granted on the basis of governmental immunity where the plaintiff, who was attending a parade, bent down to pet a firefighter's pet dog and could be observed "in close proximity to the dog's teeth." (Internal quotation marks omitted.) *Tryon* v. *North Branford*, 58 Conn. App. 702, 703–704, 712, 755 A.2d 317 (2000). This court decided that it was a question of fact whether the firefighter's failure to prevent his dog from being in close proximity to the plaintiff created a situation of imminent harm to an identifiable plaintiff. Id., 716.

[7] Compare *Durrant* v. *Board of Education*, supra, 284 Conn. 94, 96, 104 (parent who slipped and fell when picking up child from after school day care program on school grounds conducted under auspices of board of education not member of identified class of foreseeable victims), and *Prescott* v. *Meriden*, 273 Conn. 759, 760–62, 873 A.2d 175 (2005) (identified class of foreseeable victims did not include parent who slipped and fell on bleachers while attending high school varsity football game), with *Purzycki* v. *Fairfield*, 244 Conn. 101, 104, 109, 708 A.2d 937 (1998) (second grader tripped by another student during school recess in unsupervised school hallway was member of identified class of foreseeable victims as in *Burns*).

[8] Furthermore, on appeal, the plaintiff has inadequately briefed the applicability of the *individual* identifiable victim exception to the facts alleged in his complaint and the parties' affidavits in support of and in opposition to the motion for summary judgment. Rather, he baldly asserts, without citation to legal authority, that the defendants failed to meet their burden to offer sufficient evidence that he was not an "identifiable person subject to imminent harm." The plaintiff, however, fails to acknowledge that his complaint only alleges the identifiable class of foreseeable victims exception, that he failed to file a reply to the special defenses, and that he expressly advised the court that that was the nature of the exception he was claiming.

"[W]e are not required to review claims that are inadequately briefed. . . . [A]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Russel* v. *Russel*, 91 Conn. App. 619, 634, 882, A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005). "The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) Id., 635.

[9] In support of his argument for expansion of the identifiable class of foreseeable victims, the plaintiff, in his memorandum of law in opposition to the motion for summary judgment, cited *Furlani* v. *East Lyme*, Superior Court, judicial district of New London, Docket No. CV-08-5005850-S (January 22, 2010) (49 Conn. L. Rptr. 348, 348–49), and *Zaborowski* v. *New Milford*, Superior Court, judicial district of Litchfield, Docket No. CV-05-4002868-S (March 24, 2006) (41 Conn. L. Rptr. 80, 82), two cases which address whether the plaintiff was an identifiable *individual*, not whether the plaintiff was within an identifiable *class*, and neither of which otherwise specifically analyzed the identifiable class of schoolchildren exception created in *Burns*. These two cases are, therefore, inapposite to plaintiff's expressed position.

[10] Because the plaintiff has not established that he was within an identifiable class of victims at the time of the injury, we need not address whether he was subject to an imminent harm.